Commonwealth of Pennsylvania, :
Office of the Governor, :
     Petitioner :
        :
   v.    : No. 13 C.D. 2016
        : Argued: September 13, 2016
Paul Engelkemier, :
     Respondent :

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
     HONORABLE P. KEVIN BROBSON, Judge (P.)
     HONORABLE ANNE E. COVEY, Judge

**OPINION BY JUDGE BROBSON**    **FILED: October 14, 2016**

Petitioner Commonwealth of Pennsylvania, Office of the Governor (the Office) petitions for review from a December 7, 2015 final determination of the Pennsylvania Office of Open Records (OOR) under the Right-to-Know Law (RTKL).[1]  The OOR's decision granted in part and denied in part the appeal of Paul Engelkemier (Requester) from the Office's determination that his request for electronic mail (email) communications sent or received by Katie McGinty, then-Chief of Staff to Governor Tom Wolf (McGinty).  For the reasons set forth below, we affirm the OOR's final determination.

## I. BACKGROUND

The relevant background of this somewhat convoluted matter is as follows.  On July 7, 2015, Requester submitted an initial request for public records

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–.3104.

under the RTKL to the Office, seeking "[a]ll emails sent or received by Chief of Staff Katie McGinty from January 20, 2015 to present. Copy of Chief of Staff Katie McGinty's schedule from January 20, 2015 to present" (Initial Request). (Reproduced Record (R.R.) at 10a.) On July 14, 2015, the Office invoked a 30-day extension pursuant to Section 902 of the RTKL, 65 P.S. § 67.902, and notified Requester that it anticipated providing a final response to the Initial Request on or before August 13, 2015. (R.R. 13a.)

Requester sent a follow-up request on July 22, 2015, seeking the same types of records as his Initial Request but for a date range from July 7, 2015 (the date of his Initial Request) through July 22, 2015, which was the last full day of McGinty's employment as Governor Wolf's Chief of Staff (Follow-Up Request). (R.R. 11a.) The Office assigned the Follow-Up Request, whether considered a second request or a supplemental request, a separate internal tracking number and issued its final response to the Follow-Up Request by letter dated October 2, 2015. (R.R. 53a-59a.)

The Office next corresponded with Requester about the Initial Request in a July 31, 2015 email. With respect to the calendar, the Office indicated that it would be able to provide Requester "with redacted copies of former Chief McGinty's calendar by the due date of August 31, 2015." As for the emails, however, the Office sought clarification:

> [T]he agency recently received the results of the IT forensic search which (as you can imagine) includes thousands upon thousands of pages of records which are still be [sic] counted. While this fact alone is not sufficient to deny your request, the Commonwealth Court of Pennsylvania ("Court") recently opined that as a matter of law (and absent a subject matter) such a request may be deemed overly broad and lacks the specificity required under Pennsylvania's Right-to-Know Law. In

2

fact, the Court stated that this type of request was akin to and mirrored that of a "fishing expedition."

In an effort to be responsive to your request, however, please provide a subject(s) matter(s) so that the agency may begin to review these records in a more systematic fashion. In addition, and depending on the direction you provide, the agency would respectfully request an additional extension of time in which to provide a final response to this portion of your request, and that we agree to a **Rolling Production Schedule** so that records are reviewed, redacted and released in priority fashion according to your specific needs.

(R.R. 17a (emphasis in original).) Apparently having not received a response to this email, the Office sent another email to Requester on August 7, 2015, seeking a response to its prior email and again requesting an extension of time. (R.R. 29a-31a.) Requester responded by email on August 11, 2015, attaching a list of "subject matter keywords" totaling 109 different terms. The list included mostly names of individuals, some of whom are readily identifiable as public figures or public employees; organization names; and topics, such as "2015-2016 Budget," "Senate Republicans," "White House," "Cape Cod," "Massachusetts," "Pension Reform," "Liquor Privatization," "Veto," "School Funding," "Marijuana," "Senate Bill 1," House Bill 1192," "Gift Ban," "Expenses," "Reimbursement," and "Editorial Board." (R.R. 32a-37a.)

Within hours of receiving Requester's response, the Office again indicated that it would provide a final response to the portion of the Initial Request seeking copies of McGinty's calendar by August 13, 2015. (R.R. 39a.) With respect to the emails, the Office indicated that its forensic search returned "a total of 1,466 electric communications totaling 8,035 pages." The Office further indicated that it was in the process of organizing the records by calendar month. It

planned to convert the recovered records into a PDF file and print the same "for review." The Office further explained:

> While the agency appreciates your attempt to clarify the subject(s) to be searched within each record, your qualification(s) are still very broad. In addition, it will take some time for the agency to search each communication that mentions or represents communications to/from over 35 employees, 50 names of individuals, six organizations, and 20 different but generic subject matters.
>
> . . . In order to make a good faith attempt to search the electronic communications with the general parameters that you provided, however, the agency respectfully requests an additional extension of time until September 30, 2015, i.e., a little more than 45 days but which includes the Labor Day holiday.

Before agreeing to the requested extension, Requester inquired about the rolling production schedule first proposed by the Office in its July 31, 2015 email. The Office responded:

> Once all duplicates are pulled and records are organized by month, I will scan and create one pdf file for each month. This format will help to do electronic searches using the key words that you provided. I hope to have this process completed by the week of August 24th.
>
> We can then agree to a rolling production schedule where all records for one month (based on your order of preference) can be reviewed for exemption, redaction, and/or release at a time, i.e., every two weeks.

(R.R. 38a.) Requester accepted the proposed schedule, including the extension of time to September 30, 2015, to respond to the Initial Request for emails.

According to Requester, the Office provided its final response to the calendar request on August 14, 2015. Believing that the Office did not comply fully with the RTKL with respect to the production of the McGinty calendar, Requester filed an appeal with OOR on August 24, 2015 (OOR Appeal No.

4

2015-1672), challenging the Office's compliance with the RTKL with respect to the calendar production. The OOR's disposition of that appeal was the subject of a separate appeal before this Court, which the Court discontinued by order dated October 5, 2016, upon praecipe by the Office.[2]

On October 22, 2015, Requester filed the underlying appeal with the OOR, challenging the Office's partial denial of his request for the McGinty emails. (R.R. 1a-242a.) He contended that the Office only provided 71 pages of documents allegedly responsive to his request for emails. On the appeal form, Requester indicated that his RTKL request was dated July 7, 2015, with an agency response date of October 2, 2015. This latter date corresponds to the date of the Office's written final response to Requester's Follow-Up Request. Requester appended to his appeal a copy of the final response to his Follow-Up Request, as well as copies of communications between him and the Office with respect to the production of emails in response to both his Initial and Follow-Up Requests. Adding further confusion, in his appeal to the OOR, Requester referenced submissions by the Office in his separate OOR appeal relating to the calendar entries. Regardless of this blending of the calendar request with the email request and the Initial Request and the Follow-Up Request, it is abundantly clear from Requester's appeal document that he sought review only of the Office's response to his request for emails in the underlying appeal, as he had filed a separate appeal relative to the response to his request for calendar entries. Requester also expressly requested that the OOR conduct an *in camera* review of any documents

---

[2] The separate appeal was docketed with this Court as *Office of the Governor v. Engelkemier*, No. 717 C.D. 2016.

not subject to a specific exemption under the RTKL but nonetheless withheld by the Office. (R.R. 8a.)

The Office filed its response with the OOR on or about November 3, 2015. (R.R. 250a-333a.) In that response, the Office took the position that the underlying appeal relates only to the Follow-Up Request, and not the Initial Request. Nonetheless, like Requester in his appeal document, the Office references communications between the Office and Requester relative to both the Initial and Follow-Up Requests. By way of example, the Office challenged Requester's request for lack of specificity, even though, by email on August 31, 2015, the Office informed Requester that it would *not* raise a specificity objection with respect to the emails sought in the Follow-Up Request or even use the list of "subject matter keywords" Requester provided to the Office with respect to the Initial Request to limit the Office's production in response to the Follow-Up Request. (R.R. 45a.) The Office also acknowledged that with respect to the request for calendar entries, it had provided its final response to both the Initial and Follow-Up Requests on August 13, 2015. (R.R. 251a.) The Office appended to its response the Affidavit of Jessica A. Diaz, Esquire (Diaz Affidavit), relying on the affidavit and an accompanying privilege log to support various exemptions from production. The Office also contended that it properly withheld some responsive emails as "non records"—*i.e.,* information that does not "document[] a transaction or activity of an agency." *See* Section 102 of the RTKL, 65 P.S. § 67.102 (definition of "record"). The Office also contended that an *in camera* review of records withheld as either nonresponsive or "non-records" was unwarranted in the absence of proof of bad faith on the part of the Office. (R.R. 258a.)

6

The OOR appeals officer issued his final determination on December 7, 2015, granting Requester's appeal in part, denying it in part, and dismissing it as moot in part. Based on the Office's submission, the appeals officer concluded that an *in camera* review was unnecessary, but that the Office was required to produce all withheld responsive records with the exception of privileged records. The appeals officer determined that Requester's request for emails was sufficiently specific, reasoning that the request identified the types of records requested (emails), a time-frame of six months, and specific search terms responsive to the Office's request for subject matter(s). The appeals officer noted that Requester did not challenge the Office's withholding of duplicates. The appeals officer concluded that the Office had failed to meet its burden to show that the alleged "personal emails" (*i.e.*, "non-records") were not subject to the RTKL. The Office provided two "sample" emails of a personal nature, claiming that the other withheld emails were similarly not subject to disclosure.[3] The appeals officer further concluded that the Office failed to meet its burden to show that certain emails were "predecisional communications" not subject to the RTKL, reasoning that the Office revealed the subject matter discussed in the emails but did not show that "agency employees deliberated these subject matters, *i.e.* proposed courses of action." (R.R. 357a.) The appeals officer concluded that the Office met its burden of proving that some records were protected by attorney-client privilege by demonstrating that the records were communications of legal advice in ongoing litigation and that the privilege was not waived. The appeals officer also noted that

---

[3] The appeals officer noted that, because the Office had produced these two "sample" emails, the appeal was moot as it related to those two records. (R.R. 356a).

the Office specifically withheld records relating to the relocation of a company and its net tax liabilities in connection with its potential relocation in a "Neighborhood Improvement Zone," but did not raise any particular exemption or statute which would allow it to withhold those records. (R.R. 360a.) Finally, the appeals officer agreed with the Office that it could redact personal information such as email addresses and phone numbers.

## II. DISCUSSION

### A. Issues on Appeal

On January 6, 2016, the Office petitioned this Court for review.[4] The Office raises several issues on appeal. First, the Office contends that the OOR should have denied Requester's appeal as untimely filed. Second, the Office contends that the record certified by the Office is inadequate for appellate review and that, therefore, we should vacate the OOR's decision and remand the matter to the OOR for further proceedings. Third, the Office contends that the OOR erred in concluding that Requester's request was sufficiently specific. Finally, the Office contends that OOR failed to consider the totality of the evidence that the Office presented in support of the claimed exemptions from production.

---

[4] On appeal from the OOR in a RTKL case, this Court's standard of review is *de novo* and our scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013). There is nothing, however, in the RTKL that would prevent a reviewing court from adopting the findings of fact and conclusions of law of an appeals officer when appropriate. *Office of Open Records v. Ctr. Twp.,* 95 A.3d 354, 369 (Pa. Cmwlth. 2014).

## B. Analysis

### 1. Timeliness of OOR Appeal

As a preliminary matter, we address whether Requester's appeal to the OOR was timely pursuant to Section 1101 of the RTKL, 65 P.S §67.1101, which provides, in pertinent part:

> If a written request for access to a record is denied or deemed denied, the requester may file an appeal with the Office of Open Records or judicial, legislative or other appeals officer designated under section 503(d) within 15 business days of the mailing date of the agency's response or within 15 business days of a deemed denial.

The Office argues that Requester filed multiple appeals from a single request made on July 7, 2015—*i.e.*, the Initial Request—asserting that Section 1101 of the RTKL does not allow multiple appeals from a single request. In the alternative, the Office argues that the matter should be remanded to the OOR to be consolidated with Requester's appeal of the calendar request.

As noted above, Requester filed his initial appeal on August 24, 2015, which related only to his requests for McGinty's calendar entries, in response to the Office's production and partial denial on August 14, 2015. That initial appeal is currently before this Court in a separate action. The Office argues that because that appeal originated from a single written request (the Initial Request), the instant appeal was untimely as of September 4, 2015, or 15 business days after the Office's August 14, 2015 partial final response. In support of this argument, the Office cites our decision in *Department of Education v. Bagwell*, 131 A.3d 638 (Pa Cmwlth. 2016), for the proposition that "[t]he RTKL does not contemplate a series of interim responses." *Bagwell*, 131 A.3d at 654. The Office further states that

9

"[s]imilarly, [the RTKL] does not contemplate a series of appeals." (Pet'r's Br. at 10.)

Our holding in *Bagwell* is inapposite to the issue before us on appeal. The above-quoted language from *Bagwell* relates to the Commonwealth agency's obligation to issue a single, final determination rather than a series of partial determinations. The sentence in *Bagwell* following the language quoted by the Office goes on to state "[r]ather, 'once an agency exercises its right under Section 902 of the RTKL, it must provide a *final* response within the thirty-day period.'" *Id.* (quoting *Dep't of Transp. v. Drack*, 42 A.3d 355, 362 (Pa. Cmwlth. 2012) (emphasis in original)). Our decisions in *Bagwell* and *Drack* stand for the proposition that an agency may not effectively extend the deadline for responding to a request under the RTKL by issuing a preliminary or interim response, while reserving the right to issue a later "final" response. *See Drack*, 42 A.3d at 362 (holding that agency was required to identify all reasons for denying request within 30-day extension period).

While the Office argues that Requester improperly separated a single request under the RTKL and that the OOR improperly allowed a piecemeal appeal of a single request, based on our review of the record it appears that the Office bears responsibility for the bifurcation of Requester's Initial Request, which also impacted how the Office addressed the Follow-Up Request. It was the Office that first indicated that it would produce records responsive to Requester's Initial Request for copies of the McGinty calendars by August 13, 2015, but would take additional time to comply with the request for emails. In addition, it was the Office that chose to provide a single response to the portions of both the Initial Request and Follow-Up Request that sought copies of the McGinty calendar

10

entries on August 14, 2015 (one day late). It was the Office, therefore, and not Requester, that chose to address the email request(s) separately from the calendar request(s). Accordingly, the Office appears to have contravened the spirit, if not the letter, of our holdings in *Bagwell* and *Drack* by issuing a partial final decision relating to the calendar request(s), while seeking a separate extension to respond to the email request(s). Under these circumstances, Requester should not be prejudiced by the Office's violation. Therefore, for purposes of this proceeding, we construe Requester's appeal from the Office's response to his request for copies of McGinty's emails (Initial and Follow-Up Requests)[5] as separate from his appeal from the Office's response to his request for copies of McGinty's calendar entries (Initial and Follow-Up Requests) under the RTKL.[6] We, therefore, reject the Office's contention that Requester's appeal is untimely because he failed to file it within 15 business days of August 14, 2015.

## 2. *Adequacy of Certified Record*

The Office's claim that the record in this matter is inadequate for appellate review is related to its timeliness argument. The Office complains that it was "forced to separately litigate two essentially inseparable issues that arose from this single request." (Pet'r's Br. at 10.) For reasons set forth above, this complaint is not supported by the record. Requester's appeal document in this matter very

---

[5] According to both parties' briefs, any disputes over the adequacy of the Office's response to Requester's request for McGinty's emails in his Follow-Up Request have been resolved. (Pet'r's Br. at 2 n.3; Office Br. at 8 n.2.) Accordingly, this appeal only relates to McGinty's emails during the period from January 20, 2015, to July 7, 2015, the time period set forth in the Initial Request.

[6] We consequently deny the Office's request to remand and consolidate.

11

clearly indicates that the only issues in this appeal relate to how the Office responded to his request for the McGinty emails. It was the Office that attempted to confuse the matter by attempting to make its response to the request for the McGinty calendar part of Requester's appeal in this matter. Although the Office blames Requester's "haphazard" appeal strategy for what the Office contends is an unclear record, Requester's earlier appeal of the Office's partial denial of the calendar request(s) was a prudent response in light of how the Office chose to handle his request.

The record on appeal to this Court under the RTKL consists of "the request, the agency's response, the appeal filed under section 1101, the hearing transcript, if any, and the final written determination of the appeals officer." Section 1303(b) of the RTKL, 65 P.S. § 67.1303(b). The Court has reviewed the record certified by the OOR in this matter and finds it adequate for appellate review and compliant with Section 1303(b) of the RTKL. The Office's argument to the contrary is rejected.

### 3. Specificity

We have previously explained that because the RTKL "is remedial legislation designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions, the exemptions from disclosure must be narrowly construed." *Bowling v. Office of Open Records*, 990 A.2d 813, 824 (Pa. Cmwlth. 2010) (*en banc*), *aff'd*, 75 A.3d 453 (Pa. 2013). The RTKL empowers citizens of the Commonwealth to access public records concerning the actions of their government. Any request under the RTKL "must 'identify or describe the records sought with sufficient specificity to enable the agency to

12

ascertain which records are being requested.'" *Pennsylvania Dep't of Educ. v. Pittsburgh Post-Gazette*, 119 A.3d 1121, 1124 (Pa. Cmwlth. 2015) (quoting Section 703 of the RTKL, 65 P.S § 67.703). "An open-ended request that gives an agency little guidance regarding what to look for may be so burdensome that it will be considered overly broad." *Montgomery Cnty. v. Iverson*, 50 A.3d 281, 283 (Pa. Cmwlth. 2012) (*en banc*). The fact that a request is burdensome, however, is not sufficient in and of itself to deem the request overbroad. *Dep't of Envtl. Prot. v. Legere*, 50 A.3d 260, 265 (Pa. Cmwlth. 2012). When considering a challenge to the specificity of a request under Section 703 of the RTKL, 65 P.S § 67.703,[7] this Court employs a three-part balancing test, examining the extent to which the request sets forth (1) the subject matter of the request; (2) the scope of documents sought; and (3) the timeframe for which records are sought. *Pittsburgh Post-Gazette*, 119 A.3d at 1124-25.

In *Pittsburgh Post-Gazette*, we reviewed whether a request for "[a]ll of the emails of Acting Secretary of Education Carolyn Dumaresq as they pertain to the performance of her duties as Acting Secretary since she was appointed on August 25, 2014 to date" was sufficiently specific enough under the RTKL. Applying the above three-part test, we held that it was not. Though limited in time and scope, this Court held that a request for emails relating to the performance of an agency head's duties in general was too broad and amounted to a fishing

---

[7] "A written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested." Section 703 of the RTKL.

expedition. *Id.* at 1126. Accordingly, we reversed the final determination of the OOR in that matter and ruled in favor of the agency.

Here we are confronted with a similar specificity challenge. Applying the Court's three-part test, we note that Requester's RTKL request identifies a finite timeframe of January 20, 2015, to July 7, 2015, or approximately 5½ months. The request is also limited in scope to emails sent or received by McGinty. In response to a request by the Office that he further limit his request by subject matter(s), Requester provided a list of 109 different terms, or "keywords." Of this "keyword" list, the OOR appeals officer noted: "These keywords do not necessarily identify a subject matter; instead, most of the keywords identify various individuals and do not, on their face, identify a transaction or activity of the Office." (R.R. 351a.)

In *Iverson*, this Court considered a specificity challenge to a request under the RTKL for emails. The request sought all emails in the possession of Montgomery County "to and from" various mail domains, including <montgopa.org>, <septa.org>, <dvrpc.org>, <pahouse.net>, and <pasenate.com>. The request included, *inter alia*, a keyword list of 14 terms. The request, however, was not limited to certain senders/recipients and did not define a relevant time period. Montgomery County objected to the request for lack of specificity. OOR ruled in favor of the requester, but the common pleas court reversed. On appeal by the requester, this Court affirmed, reasoning:

> The Request provides no timeframe with regard to the emails it seeks. It does not identify specific individuals, email addresses, or even departments, but requests any applicable emails sent from the County's domain to four other domains. There is no context within which the search may be narrowed. It is true that the Request limits the emails sought to those that have one of

14

> fourteen terms in the subject line; however, some of these search terms, such as "Trail," are incredibly broad. Thus, . . . we hold that the trial court did not err in determining that the Request was too broad to enable the County to determine which records the Requester sought.

*Iverson*, 50 A.3d at 284.   Although *Iverson* predated this Court's decision in *Pittsburgh Post-Gazette*, its result is consistent with the three-part balancing test that this Court has adopted.  The majority in *Iverson* concluded that the request was not sufficiently specific because it was not limited in time or scope and the keyword list included some terms that were too broad.  All three criteria weighed in favor of rejecting the request for lack of specificity.  On balance, then, the Court affirmed the trial court and held that the request did not meet the specificity requirement of the RTKL.

In this case, by contrast, two of the three factors—*i.e.*, time and scope—weigh in favor of upholding the validity of the request.  The dispute here focuses on the third factor, the question being whether the keyword list Requester provided to the Office is so general, or broad, that, on balance, Requester's request fails the specificity test.  The Office acted appropriately in its July 31, 2015 email, when it requested that Requester limit his request for emails by subject matter(s). It was Requester's choice to respond with a keyword list.  A keyword list is not necessarily a substitute for a properly-defined subject matter(s)—*i.e.*, a particular transaction or activity of an agency.[8]  If terms on a list are too general or too broad,

---

[8] The RTKL does not entitle the public to access every item of information in the possession of an agency.   The information sought must meet the RTKL definition of "record"—*i.e.*, the information sought must "document[] a transaction or activity of an agency." Section 102 of the RTKL (definition of "record"); *see Pa. Office of Attorney General v. Philadelphia Inquirer*, 127 A.3d 57 (Pa. Cmwlth. 2015) (*en banc*).

a requester runs the risk that the request will be rejected for lack of specificity, if not by the agency then by the OOR or this Court. A clearly-defined subject matter, such as "liquor privatization," by contrast, has a better chance of passing the specificity test. It is true that a requester's intent—*i.e.*, the purpose or motivation underlying a request—is not a relevant consideration under the RTKL. *See* Sections 301(b), 1308(2) of the RTKL, 65 P.S. §§ 67.301(b), 67.1308(2). As we observed in *Iverson*, however, this statutory shield does not absolve a requester of his initial obligation to "inform[] an agency with sufficient specificity of the records requested." *Iverson*, 50 A.3d at 284 n.4.

Reviewing Requester's list in a vacuum, we can see merit to the Office's specificity objection with at least some terms on Requester's list. By way of example, a request to an employee of the Office of the Governor for emails that refer to the Governor (here "Tom Wolf") seems, on its face, to be overly broad.[9] In evaluating the Office's challenge to Requester's keyword list for lack of specificity, however, we also have the benefit of the record in this case, particularly the Office's response to Requester's keyword list. As noted above, although the Office characterized Requester's list as "still very broad," it did not seek further clarification from Requester. Instead, the Office informed Requester that it would group all of McGinty's emails during the requested time period by month and remove duplicates. The Office would then "scan and create one pdf file for each month." (R.R. 47a.) The Office then proposed to conduct a search of each file for the keywords that Requester provided. According to the Office:

---

[9] Similarly, a request to the Secretary of Banking for the Commonwealth for emails that include the term "banking" would likely fail the specificity test.

"We can then agree to a rolling production schedule where all records for one month (based on your order of preference) can be reviewed for exemption, redaction, and/or release at a time, i.e., every two weeks." (*Id.*) In its filings with OOR, the Office attempted to contend that due to the lack of specificity of Requester's request, it was unable to fully identify the universe of responsive records and had not yet completed its search. Such a contention, however, is not supported by the record, particularly the Office's communications with Requester prior to his appeal to OOR.[10]

In short, instead of objecting to and seeking further specificity of the request, the Office sought only additional time to identify responsive records and review such records to determine whether they should be exempted from production. Requester agreed to the requested extension, as well as a rolling production schedule that the Office proposed. If the Office had any lingering concerns over the specificity of the request, it should have raised the specificity concern at that time. It did not. It clearly acted as if it had sufficient information upon which it could fully process Requester's request and, based on that representation, secured from Requester an extension of time and agreement to a rolling production schedule. *See Meguerian v. Office of Attorney Gen.*, 86 A.3d 924, 930 (Pa. Cmwlth. 2013) (questioning whether request seeking emails between particular individual and 45 other people over period of two years was

---

[10] This is not a situation where an agency appropriately and timely raised concerns about the specificity of a request, but nonetheless acted in good faith in an attempt to identify potentially responsive records should its specificity challenge fail. As we held in *Pittsburgh Post-Gazette*, an agency's "identification of potentially responsive records . . . is not sufficient to satisfy Section 703 of the RTKL on its own." *Pittsburgh Post-Gazette*, 119 A.3d at 1126 n.8.

17

sufficiently specific under Section 703 of RTKL, but declining to answer question because agency did not raise issue and noting that "there is no need to do so here when [the agency] was able to discern responsive records based on the limited information set forth").[11]

Based on the foregoing, although Requester's keyword list is lengthy and in some respects broad, in consideration of the narrow timeframe and scope of the records Requester seeks and in light of the Office's response upon receipt of Requester's keyword list, Requester's request, on balance, meets the specificity requirement of Section 703 of the RTKL.

## 4. *Exemptions*

The Office argues that the OOR improperly neglected to consider all evidence proffered by the Office in support of its claims that certain records were exempt from disclosure under the RTKL.[12] Specifically, the Office contends that it satisfied its burden of proof through the Diaz Affidavit, as well as a supplemental affidavit submitted at the request of OOR (Diaz Supplemental Affidavit) (R.R. 342a-44a) and a 13-page "privilege" log. The Office claims that this record

---

[11] The instant case is distinguishable from our Supreme Court's holding in *Levy v. Senate of Pennsylvania*, 65 A.3d 361 (Pa. 2013). In *Levy*, the Supreme Court rejected the argument that an agency waives any exceptions *not raised* in its initial denial. Here, the Office is attempting to pursue a challenge to a request on its face as lacking specificity, not raise an exception under Section 708 of the RTKL. Moreover, here the Office did, in fact, raise the specificity objection upon receipt of the Initial Request. It later, however, affirmatively abandoned that objection when it received a keyword list from Requester and, in return, secured an extension of time from Requester.

[12] As noted above, in proceedings before the OOR, the Office unsuccessfully pressed a claim that some of the emails were personal in nature and, thus, not subject to disclosure. In its brief to this Court, the Office does not present any argument regarding McGinty's allegedly personal emails. Thus, we need not address any questions relating to McGinty's personal emails.

18

evidence supports applicability of the predecisional deliberation and budget strategy exemption (Section 708(b)(10) of the RTKL, 65 P.S. § 67.708(b)(10))[13] to certain withheld records. The Office also claims that based on this evidence, the Office properly withheld records that contained confidential tax information.[14]

---

[13] Section 708(b)(10)(i) of the RTKL provides that the following records are exempt from disclosure:

> A record that reflects:
>
> (A)   The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.
>
> (B)   The strategy to be used to develop or achieve the successful adoption of a budget, legislative proposal or regulation.

65 P.S. § 67.708(b)(10)(i).

[14] In asserting that the emails are confidential tax information subject to exemption, the Office relies upon two statutory provisions. The first provision is Section 731 of The Fiscal Code, Act of April 9, 1929, P.L. 343, added by the Act of June 6, 1939, P.L. 261, *as amended*, 72 P.S. § 731, which provides:

> Any information gained by any administrative department, board, or commission, as a result of any returns, investigations, hearings or verifications required or authorized under the statutes of the Commonwealth imposing taxes or bonus for State purposes, or providing for the collection of the same, shall be confidential except for official purposes, and except that such information may be given to any other state or to the Government of the United States, where such state or the United States by law authorizes the furnishing of similar information to the Commonwealth of Pennsylvania.

**(Footnote continued on next page…)**

19

Finally, the Office argues that the log provides sufficient information to support applicability of still other exemptions that the OOR did not consider.

Pursuant to Section 305 of the RTKL, 65 P.S. § 67.305, a record in the possession of a Commonwealth agency shall be presumed to be a public record unless the record is exempt under Section 708 of the RTKL, the record is protected by a privilege, or the record is exempt from disclosure under any other federal or state law or regulation or judicial order. *McGowan v. Pa. Dep't of Envtl. Prot.,* 103 A.3d 374, 380 (Pa. Cmwlth. 2014). The agency receiving an RTKL request bears the burden of proving the record is exempt by a preponderance of the evidence. Section 708(a) of the RTKL, 65 P.S. § 67.708(a). The preponderance of the evidence standard, which is "the lowest evidentiary standard, is tantamount to a more likely than not inquiry." *Delaware Cnty. v. Schaefer ex rel. Philadelphia Inquirer*, 45 A.3d 1149, 1154 (Pa. Cmwlth. 2012) (*en banc*). "Testimonial affidavits found to be relevant and credible may provide sufficient evidence in support of a claimed exemption." *Heavens v. Pa. Dep't of Envtl. Prot.*, 65 A.3d 1069, 1073 (Pa. Cmwlth. 2013).

We first consider whether the OOR erred in failing to exempt certain responsive records under the predecisional deliberation exemption. The Office

---

**(continued…)**

The other statutory provision is Section 274 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, 72 P.S. § 7274, which provides:

> Any information gained by the department as a result of any return, examination, investigation, hearing or verification, required or authorized by this article, shall be confidential, except for official purposes and except in accordance with proper judicial order or as otherwise provided by law[.]

relies on the Diaz Affidavit, particularly the averment that withheld documents represented:

> Internal predecisional deliberations by and between agency employees that pertained to matters under consideration and which concerned meetings with legislators, budget discussions and briefings of the Governor, appointments to boards and commissions, scheduling, weekly departmental status reports submitted by cabinet members, the status of confirmation of cabinet members submitted by the Governor, and consideration of and resumes submitted by individuals for possible employment.

(R.R. 309a.) The appeals officer, considering the affidavit but rejecting it as inadequate to meet the Office's burden of proof, reasoned that "[w]hile the [Office] identifies certain subject matters that were discussed, there is no evidence that the agency employees deliberated these subject matters, *i.e.* proposed courses of action. Therefore, the Office has not met its burden of proving that these records are exempt from disclosure." (R.R. 357a.) We find no error in the OOR's conclusion.

In *Office of Governor v. Scolforo*, 65 A.3d 1095 (Pa. Cmwlth. 2013), we were presented with a nearly identical factual situation in which a requester sought the calendar and email records of the Governor. The Office asserted the predecisional deliberation exemption and, in support, offered an affidavit, which provided, in pertinent part:

> [the redactions at issue] were reflective of internal deliberations that preceded decisions related to subjects including the transition into the new administration, personnel, budgetary and policy decisions, related courses of actions and implementation of changes in the direction of the administration.

21

*Scolforo*, 65 A.3d at 1104. Rejecting the affidavit as merely conclusory and, therefore, inadequate to meet the Office's burden, we opined:

> The Affidavit contains no further specifics. It is, therefore, without more, not sufficient to prove that the records are exempt. While the Affidavit tracks the language of the exception it presupposes, rather than proves with sufficient detail, that the redacted Calendar entries are reflective of internal deliberations and, therefore, exempt from disclosure. It is not enough to include in the Affidavit a list of subjects to which internal deliberations may have related. The Affidavit must be specific enough to permit the OOR or this Court to ascertain how disclosure of the entries would reflect the internal deliberations on those subjects. Because this Affidavit is not detailed, but rather conclusory, it is not sufficient, standing alone, to prove that the Calendar entries are exempt from disclosure.

*Id*. (internal citation omitted). The Diaz Affidavit here is similarly conclusory and, therefore, similarly deficient.[15]

Even if the Diaz Affidavit was sufficiently detailed, it would nonetheless be irrelevant to this appeal. As noted above, the parties have resolved their differences with respect to the production of McGinty emails in response to the Follow-Up Request. All that remains in dispute is the adequacy of the Office's response to the Initial Request for McGinty's emails—*i.e.*, emails during the period from January 20, 2015, through July 7, 2015. The Diaz Affidavit, however, only addresses the Office's review of emails for the period July 7, 2015 through

---

[15] The Diaz Supplemental Affidavit addressed specifically the Office's assertion of the attorney/client privilege and attorney work-product doctrine as grounds to withhold certain documents from production. Based on the Diaz Supplemental Affidavit, the OOR held that the Office met its burden of proof with respect to these exemptions from production. (R.R. 357a-59a.)

22

July 23, 2015—*i.e.*, the approximate period of the Follow-Up Request. (Diaz Affidavit ¶¶ 7, R.R. 308a.) The Diaz Affidavit does not at all address the Office's review of responsive emails for the period of time covered by the Initial Request. Accordingly, the Diaz Affidavit provides no evidentiary support for any exemption asserted by the Office with respect to the McGinty emails that are the subject of this appeal.

The Office also asserts that these documents are "on their face" exempt from disclosure, citing our decision in *Office of the Governor v. Davis*, 122 A.3d 1185 (Pa. Cmwlth. 2015). The facts in *Davis*, however, are distinct from those in the instant case. In *Davis*, the OOR conducted an *in camera* review of the documents and supplemented the record certified to this Court with the records it reviewed under seal. *Davis*, 122 A.3d at 1190. We held that an affidavit or other documentary evidence supporting each element of each exemption was not required when the applicable exemptions were apparent based on an *in camera* review of the records. *Id.* at 1194. Here, the Office objected to an *in camera* review and presented no records for review to the OOR aside from the two sample personal emails noted above. Accordingly, an agency cannot argue successfully that a record is "exempt on its face" when the agency does not allow OOR to see the face of the record.

Finally, we address the Office's reliance on what it refers to as a "thirteen page privilege log that identified the contents of McGinty's 'Sent' and 'Deleted' folders." (Office Br. at 13.) This Court has held that "a privilege log, which typically lists the date, record type, author, recipients, *and a description of the withheld record*, can serve as sufficient evidence to establish an exemption, especially where the information in the log is bolstered with averments in an

affidavit." *McGowan v. Pa. Dep't of Envtl. Prot.*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014) (emphasis added). The Office submitted this log to OOR as part of its response to Requester's appeal. (R.R. 263a-76a.) In its response document, the Office described this log as the "preliminary results" of a search of McGinty's "Sent" and "Deleted" items folders for the keywords Requester provided. (R.R. 255a.)

Each row of the Office's log purports to reflect the results of a search in either the "Sent" or "Deleted" items folder for each term in Requester's keyword list. Each row has four columns, titled "Keyword(s)," "Results," "Page Number(s) as Noted from PDF File," and "Notes." Upon our inspection, the document is not a privilege log of the type this Court discussed in *McGowan*. The log is not a list of responsive documents for which the Office is claiming some sort of privilege or exemption under the RTKL. Instead, it is a log of searches that the Office performed against some folders within the Office's email system that contain McGinty's email. The log does not identify any responsive documents by date, type, author, recipient, or description. Without this basic information, to the extent the Office does intersperse claimed exemptions within the "Notes" column in the log, there is no way, on the face of the log itself, to evaluate the merit of any claimed exemption to a particular document or documents. There is also no affidavit supporting the creation of the log, its contents, or any exemption claimed therein. Accordingly, to the extent the ORR did not consider the Office's log as evidence in support of an exemption for production, it did not err.

## III. CONCLUSION

As explained above, Requester's underlying appeal to OOR regarding the Office's response to his RTKL request for McGinty emails was timely. The

24

record before us is adequate for appellate review of the OOR's decision below under the RTKL. Applying the Court's balancing test set forth in *Pittsburgh Post-Gazette*, Requester's RTKL request complied with the specificity requirement under the RTKL. Finally, the OOR did not err in holding that the Office failed to meet its burden with respect to certain claimed exemptions. We, therefore, will affirm the OOR's final determination in this matter.

P. KEVIN BROBSON, Judge

25

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
Office of the Governor, :
                 Petitioner :
                           :
          v. : No. 13 C.D. 2016
                           :
Paul Engelkemier, :
                Respondent :

## O R D E R

AND NOW, this 14th day of October, 2016, we affirm the final decision of the Pennsylvania Office of Open Records (OOR) as set forth in the accompanying opinion.

_____
P. KEVIN BROBSON, Judge