IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Appeal of Joshua S. | : | |
| Mazin, Esquire | : | |
| | : | |
| From Adjudication of | : | |
| Pennsylvania Office of | : | |
| Open Records Ref: The School | : | No. 1126 C.D. 2022 |
| District of Philadelphia | : | Submitted: March 4, 2025 |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                          FILED: April 21, 2025


Joshua S. Mazin, Esquire (Mazin), appeals from the July 13, 2022, order of the Court of Common Pleas of Philadelphia County (trial court). The trial court's order denied Mazin's appeal from the final determination of the Pennsylvania Office of Open Records (OOR). The OOR had denied Mazin's appeal from the response of the School District of Philadelphia (District) to Mazin's June 2021 request pursuant to the Right-to-Know Law (RTKL).[1] Upon review, we affirm.


## I.  Factual and Procedural Background

On June 17, 2021, Mazin submitted a RTKL request to the District (Request) seeking the following records related to the West Philadelphia Achievement Charter Elementary School (WPAC):

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

1. Any and all written correspondence (letter, facsimile, or email correspondence) from the [District] to the Pennsylvania Department of Education [(DOE)] relating to amendments, renewals, non-renewals, draft charter agreements or proposals for amendments, renewals, non-renewals, and draft charter agreements for [WPAC] for the years 2005-2006, 2010-2011, 2015-2016, & 2020-2021.

2. All recommendations for the renewal of the charter of [WPAC] presented to the governing body of [the District] in the years 2005, 2006, 2010, 2011, 2015, 2016, and 2021.

3. All comprehensive reviews of [WPAC] conducted by [the District] in the years 2005, 2006, 2010, 2011, 2015, 2016, and 2021.

4. All written correspondence between or among [District] employees, contractors, or members of its governing body, concerning the enrollment of students at [WPAC].

5. All documents received by [the District] from representatives of [WPAC] relating to construction or renovations of the 6701 Callowhill Street property [where WPAC is located], including any documents received with respect to the financing of any such work.

6. All written correspondence received by [the District] from representatives of [WPAC] concerning any limitations on student enrollment at [WPAC], years 2005, 2006, 2010, 2011, 2015, 2016, 2019, and 2021.

All references herein to the [District] are inclusive of its employees, agents, representatives, attorneys, contractors and governing bodies, including the School Reform Commission of the [District] and the [District] Board of Education.

All references herein to the [DOE] [are] inclusive of its employees, agents, representatives, attorneys, and contractors.

Reproduced Record (R.R.) at 1a-2a.

The District responded that Request Items #1, #4, #5, and #6 of Mazin's request were insufficiently specific. R.R. at 4a. The District granted Request Items #2 and #3 in part, directing Mazin to information publicly available on the District's website's section concerning WPAC and averring that no other responsive records existed. *Id*. at 5a. Mazin appealed to the OOR and both sides prepared briefs. *Id*. at 6a-36a. The District's brief included affidavits from the acting chief of its Charter Schools Office and the executive director of its District Performance Office outlining their searches for the requested records. *Id*. at 37a-44a.

On September 30, 2021, the OOR issued a final determination denying Mazin's appeal on the basis that Request Items #1, #4, #5, and #6 were insufficiently specific.[2] R.R. at 45a-55a (citing *Pa. Dep't of Educ. v. Pittsburgh Post-Gazette*, 119 A.3d 1121 (Pa. Cmwlth. 2015) (*Post-Gazette*)). Mazin appealed to the trial court, which accepted briefs from both sides (neither of which presented additional evidence) and held oral argument. *Id*. at 69a-98a & 100a-04a. On July 13, 2022, the trial court issued its order denying the appeal and affirming the OOR's final determination. *Id*. at 99a. Mazin timely appealed the trial court order to this Court, and the trial court issued its opinion explaining that Mazin's requests lacked specific subject matter and scope and "covered too long of a period to reasonably facilitate a response" from the District. *Id*. at 116a-17a & 119a-31a. This matter is now ripe for review.

---

[2] The OOR's final determination also upheld the District's responses to Items #2 and #3 of Mazin's request. R.R. at 52a-54a. Mazin did not appeal that determination and it is not at issue in this appeal.

## II. Issue & Arguments

Mazin asserts that the trial court erred because the Request, viewed in the proper context, is sufficiently specific. Mazin's Br. at 7 & 13. He asserts that the Request's subject matter terms would be "closely familiar" to District officials as they are used in Pennsylvania's school laws and regulations and are core activities of the District's charter school division.[3] *Id.* He avers that the scope of the Request was sufficiently defined (correspondence within the District and between the District and the DOE). *Id.* at 18. He notes that the years listed in the Request were the time periods when WPAC was up for charter renewal. *Id.* at 15. The District did not file a brief with this Court.[4]

---

[3] Mazin gives the following examples from the Charter School Law as contained in the Public School Code, Act of March 10, 1949, P.L. 30, *as amended*, added by the Act of June 19, 1997, P.L. 225: Section 1728-A(a), 24 P.S. § 17-1728-A, requires districts to undertake a "comprehensive review" prior to renewing a school charter, and Section 1729-A(a), 24 P.S. § 17-1729-A, sets forth the reasons that a district may rely on for "non-renewal" of a school's charter.

[4] For informational purposes only, we note that the District's brief to the trial court is of record. *See* Original Record (O.R.) at 164-79 (using electronic pagination). Therein, the District stated that Mazin's subject matter terms were too generalized and that the Request compounded the vagueness in Items #1 and #6 by seeking any correspondence "relating to" or "concerning" those terms. *Id.* at 170-72. The District faulted the scope of the Request as failing to identify a clear type of record beyond "all correspondence" and because the pool of senders and recipients at the District and the DOE potentially encompassed thousands of individuals. *Id.* at 173-76. The District added that the Request's timeframe was either too long (eight years in Items #1 and #5) or unspecified at all. *Id.* at 177-78.

### III. Discussion

The RTKL "empower[s] citizens by affording them access to information concerning the activities of their government."[5] *Levy v. Senate of Pa.*, 65 A.3d 361, 381 (Pa. 2013) (quotation marks omitted). A RTKL requester "tells the agency what records he wants, and the agency responds by either giving the records or denying the request by providing specific reasons why the request has been denied." *Pa. State Police v. Off. of Open Recs.*, 995 A.2d 515, 516 (Pa. Cmwlth. 2010). Section 703 states that a request "should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested." 65 P.S. § 67.703. "An open-ended request that gives an agency little guidance regarding what to look for may be so burdensome that it will be considered overly broad." *Montgomery Cnty. v. Iverson*, 50 A.3d 281, 283 (Pa. Cmwlth. 2012) (*Iverson*). The fact that a request is burdensome, however, is not sufficient in and of itself to deem the request overbroad. *Dep't of Env't Prot. v. Legere*, 50 A.3d 260, 265 (Pa. Cmwlth. 2012).

When considering a specificity challenge, this Court employs a three-part test focusing on "(1) the subject matter of the request; (2) the scope of documents sought; and (3) the timeframe for which records are sought." *Post-Gazette*, 119 A.3d at 1124-25. The test is flexible and subject to case-by-case and contextual application; no one factor is dispositive. *See Off. of Dist. Att'y v. Bagwell*, 155 A.3d 1119, 1145 (Pa. Cmwlth. 2017). For example, a request with broad subject matter may be sufficiently specific if it is limited to a narrow scope and timeframe.

---

[5] Where a RTKL appeal is taken from a court of the common pleas, this Court's review is limited to "determining whether findings of fact are supported by substantial evidence, or whether the lower court committed an error of law or abuse of discretion in reaching its decision." *Gray v. Phila. Dist. Att'y's Off.*, 311 A.3d 1230, 1236 n.8 (Pa. Cmwlth. 2024).

5

*See Pa. Off. of the Governor v. Brelje*, 312 A.3d 928, 937-38 (Pa. Cmwlth. 2024) (*Brelje*) (upholding a request for all emails sent and received by two specific individuals over the course of less than one month).

With regard to subject matter, a request must identify the "transaction or activity" of the agency for which the record is sought. *See Post-Gazette*, 119 A.3d at 1125 (citing Section 102 of the RTKL, 65 P.S. § 67.102, defining a "record" under the RTKL as "[i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency"); *see also Mollick v. Twp. of Worcester*, 32 A.3d 859, 871 (Pa. Cmwlth. 2011) (rejecting request for emails "regarding any Township business and/or activities"). The subject matter should provide a context to narrow the search. *Post-Gazette*, 119 A.3d at 1125; *see also Iverson*, 50 A.3d at 284 (stating that while the request sought emails having "one of fourteen terms in the subject line," some of the search terms were "incredibly broad"); *Mollick*, 32 A.3d at 871 (concluding that "it would place an unreasonable burden on an agency to examine all its emails for an extended time period without knowing, with sufficient specificity, [to] what Township business or activity the request is related"). Including search terms or "keywords" in a request may be acceptable if the terms themselves are sufficiently specific. *See Commonwealth v. Engelkemier*, 148 A.3d 522, 531-33 (stating that a request for emails regarding "the Governor" may be overly broad while a request for records pertaining to "liquor privatization" may be sufficient); *Iverson*, 50 A.3d at 284. In short, the subject matter must be specific enough that the request is not a "fishing expedition." *See Post-Gazette*, 119 A.3d at 1126.

Regarding scope, a request must identify "a discrete group of documents, either by type . . . or by recipient." *Post-Gazette*, 119 A.3d at 1125. Proper scope requires that the request seek "a clearly-defined universe of documents" that requires no judgments to be made by the agency entertaining the request. *See Legere*, 50 A.3d at 265. In *Pennsylvania State Police*, the portion of the request seeking "any and all records, files or communications" related to vehicle stops, searches, and seizures was insufficiently specific, but the portion of the request seeking a particular type of document—manuals related to vehicle stops, searches, and seizures—was sufficiently specific. 995 A.2d at 517. Given the flexibility of the test, a request for a broad category of documents may be sufficient if confined to a particular author or recipient. *Compare Carey v. Pa. Dep't of Corr.*, 61 A.3d 367, 372 (Pa. Cmwlth. 2013) (upholding a request for "all records that were provided to the transferred inmates" because it sought "a discrete group of documents" limited by recipient), *with Iverson*, 50 A.3d at 284 (finding insufficient a request that "does not identify specific individuals, email addresses, or even departments, but requests any applicable emails sent from the County's domain to four other domains").

Last, a request should identify a finite timeframe for which records are sought. *See Post-Gazette*, 119 A.3d at 1126. This is the "most fluid" element and is "generally dependent upon the specificity of the request's subject matter and scope." *Compare Legere*, 50 A.3d at 265 (upholding a request spanning over four years but seeking "a clearly defined universe of documents"), with *Mollick*, 32 A.3d at 871 (rejecting a request seeking all emails between township supervisors regarding any township business or activity for a period of one to five years). A request that lacks a timeframe may still be sufficient if it is otherwise specific.

7

*Compare Pa. Hous. Fin. Agency v. Ali*, 43 A.3d 532, 536 (Pa. Cmwlth. 2012) (rejecting a request lacking a timeframe for all correspondence concerning financing transactions for two housing projects but upholding a request for proposals and sales agreements relating to the projects), *with Pa. State Police*, 995 A.2d at 517 (upholding a request for manuals relating to vehicle stops, searches, and seizures that did not specify a timeframe).

### A.  Request Item #1

Request Item #1 seeks:

> Any and all written correspondence (letter, facsimile, or email correspondence) from the [District] to the [DOE] relating to amendments, renewals, non-renewals, draft charter agreements or proposals for amendments, renewals, non-renewals, and draft charter agreements for [WPAC] for the years 2005-2006, 2010-2011, 2015-2016, & 2020-2021.

R.R. at 2a.

The OOR concluded that Item #1 was overly broad and the trial court agreed.  R.R. at 51a-52a & 126a-27a.  The trial court found the terms "general" in nature and the use of "relating to" with regard to those terms "significantly expanded the request to comprise any possible correspondence that may have remotely borne some relevant nexus" to any of Item #1's general terms.  *Id*. at 128a.  The trial court also critiqued the scope of Item #1 because it "envisioned communications by any of the at least possible 19,000 [District] employees and contractors with a multitude of" possible recipients at the DOE.  *Id*.  Given the broad subject matter and scope, the trial court also found Item #1's timespan, encompassing four renewal periods over eight years, overly broad.  *Id*.

8

We agree. The subject matter terms are used in school statutes pertaining to charter school renewals, which are part of the District's activities and duties; Item #1 also limits the application to WPAC. However, the demand for all written correspondence "relating to" those terms expands the potential net significantly and the terms themselves are general. For example, Section 1728-A(a) of the Charter School Law requires districts to conduct a "comprehensive review" of a charter school before renewal. 24 P.S. § 17-1728-A(a). However, "comprehensive review" is not defined and has not been the subject of extensive litigation. This kind of generality was deemed insufficient in *Iverson*. 50 A.3d at 284.

The scope of Item #1 is broad. Although Mazin qualifies the type of documents sought ("all written correspondence"), the designation is less specific than, for example, the "Section 208 determination letters" in *Legere*, which are statutorily governed determinations by the Department of Environmental Protection that state whether oil or gas drilling operations cause land or water pollution. If Mazin sought a copy of a proposed amendment or draft agreement, that could be sufficiently specific. However, seeking any and all correspondence relating to either of those documents entails significantly more information. Item #1 puts the District in the position of having to make judgment calls regarding some correspondence that might be tangential to the proposal or agreement. Moreover, Item #1 seeks all correspondence sent by anyone from the District to anyone in the DOE; no individual senders or recipients or even groups or divisions within these large entities are specified. In *Iverson*, this Court found such a lack of specificity insufficient. 50 A.3d at 284.

9

Item #1's timeframe is likewise broad. Although Mazin asserts that this Item covers only the two-year time periods when WPAC's charter was up for renewal, the correspondence Mazin seeks could have been created in years outside of those periods. For example, an email "relating to" the 2015-16 renewal might have been sent in 2014. Given Item #1's overall time span from 2005-21, it could encompass nearly 20 years of records. This is far longer than, for example, *Mollick*, where this Court rejected a request with broadly worded subject matter and scope seeking records spanning a period of one to five years. 32 A.3d at 871.

The *Post-Gazette* test is flexible, case specific, and requires the consideration of the various factors (subject matter, scope, and timeframe), none of which are dispositive, to determine whether a given request is sufficiently specific. *See Brelje*, 312 A.3d at 938. Weakness in one aspect of the test may be offset by strength in the other factors, as in *Brelje*, where a request with broad subject matter (all emails sent and received) was deemed acceptable because it was narrow in scope (two individuals) and timeframe (less than a month). *Id*. at 938-40. Here, however, none of the three *Post-Gazette* factors are met. Accordingly, Request Item #1 does not seek "a clearly defined universe of documents," and the trial court did not err in concluding that it is insufficiently specific. *Legere*, 50 A.3d at 265.

**B. Request Item #4**

Request Item #4 seeks "[a]ll written correspondence between or among [District] employees, contractors, or members of its governing body, concerning the enrollment of students at [WPAC]." R.R. at 2a. The OOR concluded that this Item was overly broad, and the trial court agreed, stating that the subject matter of "enrollment of students" is already "far-reaching" and the use of "concerning,"

10

which is "vague verbiage," overly expanded the potential responses. *Id*. at 51a-52a & 129a. The trial court also noted the lack of any timeframe in this requested Item, meaning that it could encompass the entire 20-year history of WPAC. *Id*.

For the reasons set forth with regard to Request Item #1, we agree. The subject matter of "enrollment of students" at a charter school would clearly be familiar to District personnel, but Item #4 does not ask for anything concrete such as actual figures or data. Instead, Item #4 seeks anything "concerning" WPAC student enrollment, which would almost certainly require the District to make judgment calls when some records might only tenuously "concern" the issue. This type of generalization was found insufficient in *Iverson*. 50 A.3d at 284. Item #4's scope is ostensibly limited to "[a]ll written correspondence between or among [District] employees, contractors, or members of its governing body," which is vague in terms of category and potential number of senders and recipients. *See Legere*, 50 A.3d at 265; *Iverson*, 50 A.3d at 284. The lack of specificity in subject matter and scope is not offset by the lack of timeframe, particularly when compared to our cases holding that requests lacking a defined timeframe may be acceptable when accompanied by a reasonably narrow subject matter and scope. *See*, *e.g.*, *Legere*, 50 A.3d at 265; *Pa. State Police*, 995 A.2d at 517. Taken as a whole, Request Item #4 meets none of the three *Post-Gazette* factors and does not seek "a clearly defined universe of documents." *Legere*, 50 A.3d at 265. Accordingly, the trial court did not err in concluding that Request Item #4 is insufficiently specific.

### C. Request Item #5

Request Item #5 seeks "[a]ll documents received by [the District] from representatives of [WPAC] relating to construction or renovations of the 6701

Callowhill Street property, including any documents received with respect to the financing of any such work." R.R. at 2a. The OOR concluded that this Item was overly broad, and the trial court agreed, stating that the use of "relating to" unjustifiably widened the subject matter, the scope identified no document types or individual/group recipients, and the request lacked any timeframe. *Id*. at 51a-52a & 130a.

For the reasons set forth with regard to Request Items #1 and #4, we agree. The subject matter of Request Item #5 is limited to construction, renovations, and financing at WPAC's location; however, the scope is unlimited in category, seeking "all documents," and does not specify or narrow the District recipients. As with Request Item #4, the request contains no timeframe restrictions. Although the relatively specific subject matter of this Item makes it a closer call than Items #1 and #4, the virtually unlimited scope and timeframe mitigate against a finding of specificity. Taken as a whole, Request Item #5 does not satisfy any of the three *Post-Gazette* factors and the request does not seek "a clearly defined universe of documents." *Legere*, 50 A.3d at 265. Accordingly, the trial court did not err in concluding that Request Item #5 is insufficiently specific.

**D. Request Item #6**

Request Item #6 seeks "[a]ll written correspondence received by [the District] from representatives of [WPAC] concerning any limitations on student enrollment at [WPAC], years 2005, 2006, 2010, 2011, 2015, 2016, 2019, and 2021." The OOR concluded that this Item was overly broad, and the trial court agreed, stating that the use of "concerning" impermissibly broadened the subject matter, the

12

scope lacked an identifiable recipient, and the timeframe was too lengthy. R.R. at 51a-52a, 130a-31a.

For the reasons set forth with regard to Request Items #1, #4, and #5, we agree. As with Request Item #4, the subject matter of "limitations on student enrollment" at a charter school like WPAC would be familiar to District personnel, but Request Item #6 does not request anything concrete such as actual figures or data. Instead, Item #6 seeks anything "concerning" enrollment limitations, which would require the District to make judgment calls when some records might only tenuously "concern" the issue. This type of generalization was found insufficient in *Iverson*. 50 A.3d at 284. The scope is ostensibly limited, but "[a]ll written correspondence received by [the District]" from WPAC is simply too vague in terms of record category and the potential number of recipients. *See Legere*, 50 A.3d at 265; *Iverson*, 50 A.3d at 284.

The timeframe is also potentially broad. As with Request Item #1, the request lists specific years, but the sought correspondence could have been created in different years. For example, an email "concerning any limitations on student enrollment at [WPAC]" for 2015 might have been received in 2014. Given the request's overall time span from 2005-21, the request could encompass nearly 20 years of records. Again, this is far longer than, for example, *Mollick*, where we rejected a request with broad subject matter and scope that sought records spanning a period of one to five years. 32 A.3d at 871. Taken as a whole, Request Item #6 does not satisfy any of the three *Post-Gazette* factors and the request does not seek "a clearly defined universe of documents." *Legere*, 50 A.3d at 265. Accordingly, the trial court did not err in concluding that Request Item #6 is insufficiently specific.

13

## IV. Conclusion

For the foregoing reasons, the trial court did not err in denying Mazin's appeal from the OOR's determination that his RTKL request was insufficiently specific. Accordingly, the trial court's July 13, 2022, order is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Appeal of Joshua S. Mazin, Esquire | : | |
| | : | |
| | : | |
| From Adjudication of | : | |
| Pennsylvania Office of | : | |
| Open Records Ref: The School | : | No. 1126 C.D. 2022 |
| District of Philadelphia | : | |

# **O R D E R**

AND NOW, this 21st day of April, 2025, the July 13, 2022, order of the Court of Common Pleas of Philadelphia County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge