# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Office of the Governor,   :
                  Petitioner   :
                  :
           v.   :   No. 363 C.D. 2022
                  :   Submitted: February 10, 2023
Beth Brelje (Office of Open   :
Records),   :
                  Respondent   :

BEFORE:     **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                  **HONORABLE MICHAEL H. WOJCIK,** Judge
                  **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

OPINION BY
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: February 23, 2024**

Pennsylvania Office of the Governor (Governor's Office) petitions for review of the Office of Open Record's (OOR) Final Determination granting in part and denying in part the request of Beth Brelje (Requester) seeking emails of two individuals under the Right-to-Know Law (RTKL).[1]  After careful review, we affirm in part, reverse in part, and remand.

## I. Background

### A. *Factual and Procedural Background*

On January 6, 2022, Requester filed two RTKL requests, one seeking "[a]ll incoming and outgoing email for Deputy Press Secretary Emily Demsey, Dec. 1-Dec. 10" and the other seeking "[a]ll incoming and outgoing email for Press Secretary Elizabeth Rementer, Dec. 11-Dec. 31" (Requests).  (Reproduced Record (R.R.) at 6a-7a.)  The Governor's Office provided an interim response to Requester

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

on January 13, 2022, indicating that it would need an extension of time pursuant to Section 902(a)(1), (3), (4), and (7) of the RTKL, 65 P.S. § 67.902(a)(1), (3), (4), and (7), to identify the records and conduct a legal review. (R.R. at 5a.) It represented that it "ha[d] begun the process of identifying records that may be responsive to [the R]equests. The extent [thereof], however, precludes a response within five business days as required by the [RTKL]." (*Id.*)

On February 14, 2022, the Governor's Office denied the Requests. (*Id.* at 3a.) The Governor's Office determined that the Requests were not sufficiently specific pursuant to Section 703 of the RTKL, 65 P.S. § 67.703, pointing to the three-part test which requires subject matter, scope of request, and timeframe to be identified. *Carey v. Dep't of Corr.*, 61 A.3d 367, 372 (Pa. Cmwlth. 2013). From the perspective of the Governor's Office, the Requests failed the first prong, as they "define[d] no subject matter about which [Requester] seek[s] records." (R.R. at 3a.)

That same day, Requester appealed to the OOR. (*Id.* at 1a.) Requester argued that the Requests were "so clear and specific that if . . . anyone with basic email knowledge, were sitting at a computer with access, the requested documents could easily be found in moments." (*Id.* at 2a.) Requester asserted that the Requests satisfied each of the *Carey* factors. (*Id.*) On February 25, the Governor's Office submitted a position statement. It characterized the requirement that the request identify the "subject matter" of the request as "a wholly appropriate and necessary point of inquiry." (*Id.* at 18a.) It took the position that because the Requests were not sufficiently specific, it was "not able to compile and review all potentially responsive records." (*Id.* at 19a.) However, it specifically requested "the opportunity to review and provide more detailed information regarding sufficient

2

bases to withhold or redact those privileged or exempt records" in the event the OOR did not agree the Requests were insufficiently specific. (*Id.* at 20a)

The Governor's Office also submitted an affirmation (Affirmation), sworn by its agency open records officer. Therein, the open records officer explains that he consulted with custodians, thereby determining the lack of meaningful subject matter prevented identification of responsive records. (Affirmation ¶¶ 3-4.[2]) The Affirmation continues that, "if specifically identified" the records would be exempt for several reasons. (*Id.* ¶¶ 10-15.)

### B. The OOR's Final Determination

In its Final Determination, the OOR likened the emails at issue in this case to those sought by the requester in *Easton Area School District v. Baxter*, 35 A.3d 1259 (Pa. Cmwlth. 2012), and our recent unreported decision in *Methacton School District v. Office of Open Records* (Pa. Cmwlth., No. 250 C.D. 2021, filed December 28, 2021). It reasoned that by focusing on two individuals' communications within a short period of time, the Requests were sufficiently specific to pass muster under *Carey*. The OOR then rejected the Governor's Office's argument that it should have the opportunity to "review and provide more detailed information regarding sufficient bases to withhold or redact privileged or exempt records." (Final Determination at 6 (quotation marks omitted).) However, the OOR construed this argument as a request to bifurcate the proceeding, and it declined to do so. It explained that "[b]ecause there is no statutory mechanism enabling the OOR to bifurcate an appeal, the [Governor's] Office was required to raise all of its arguments and support them with evidence in the normal course of the appeal." (*Id.*) It did, however, permit the Governor's Office to redact email addresses, phone numbers,

---

[2] The Affirmation can be found at pages 21a-25a of the Reproduced Record.

and other sensitive information upon its review per Section 708(b)(6)(i)(A) of the RTKL, 65 P.S. § 67.708(b)(6)(i)(A). The Governor's Office timely petitioned for review of the OOR's Final Determination. (*See* Petition for Review.) All parties having had the opportunity to brief the issues, this case is now ripe for our disposition.[3]

### C. Issues

Before this Court, the Governor's Office raises three issues, reordered for ease of disposition, asking us to determine: (1) whether the OOR erred in finding the Requests to be sufficiently specific; (2) whether the OOR erred in determining the Governor's Office's request for further review with respect to privilege and exempt records was insufficient in light of *Pennsylvania State System of Higher Education v. Association of State College and University Faculties*, 142 A.3d 1023 (Pa. Cmwlth. 2016) (*PASSHE*); and (3) whether the OOR erred in disregarding substantial evidence that the records at issue were exempt and privileged. (Petition for Review ¶ 4(a)-(c).)

## II. Discussion

### A. General Legal Principles

#### 1. The RTKL

"[W]hen the General Assembly replaced the Right to Know Act[4] in 2009 with the current RTKL, it 'significantly expanded public access to governmental records . . . with the goal of promoting governmental transparency.'" *Pa. State Police v. Grove*, 161 A.3d 877, 892 (Pa. 2017). Consistent with that focus on transparency, the RTKL created a statutory presumption that "record[s] in the possession of a

---

[3] Requester did not file a brief.

[4] Act of June 21, 1957, P.L. 390, *as amended*, *formerly* 65 P.S. §§ 66.1-.66, repealed by the RTKL.

4

Commonwealth agency or local agency" are public records. Section 305(a) of the RTKL, 65 P.S. § 67.305(a). That presumption does not apply to records the statute specifically exempts under Section 708,[5] records protected by a privilege,[6] or records exempt by operation of, *inter alia*, federal or state law. Section 305(a)(1)-(3) of the RTKL, 65 P.S. § 67.305(a)(1)-(3). Notably, unlike the predecessor Right to Know Act, under the RTKL, the agency—not the requester—bears the burden of proving that a given record is exempt from disclosure. 65 P.S. § 67.708(a)(1). The RTKL also has demanding deadlines. The agency has five business days to respond, Section 901 of the RTKL, 65 P.S. § 67.901, which may be extended if one of several conditions applies, 65 P.S. § 67.902(a). If the requester appeals the agency's determination, the OOR must issue a final determination within 30 days. Section 1101(b)(1) of the RTKL, 65 P.S. § 67.1101(b)(1).

### 2. Standard and Scope of Review[7]

Pursuant to Chapter 13 of the RTKL, with respect to appeals relating to decisions of Commonwealth agencies, this Court is the ultimate factfinder in RTKL

---

[5] Section 708 enumerates 30 specific exemptions. 65 P.S. § 67.708.

[6] The RTKL defines "privilege" as including: the attorney-work product doctrine, the attorney-client privilege, the doctor-patient privilege, the speech and debate privilege, or other privilege recognized by a court interpreting the laws of this Commonwealth. Section 102 [of the RTKL], 65 P.S. § 67.102. Where a privilege does apply, an agency does not have discretion to release for public access information protected by privilege. Section 506 [of the RTKL], 65 P.S. § 67.506.

*Heavens v. Pa. Dep't of Env't Prot.*, 65 A.3d 1069, 1074 (Pa. Cmwlth. 2013).

[7] Standard of review refers to "the degree of deference or scrutiny that an appellate court will use in reviewing a lower tribunal's determination." Jeffrey P. Bauman, *Standards of Review and Scopes of Review in Pennsylvania – Primer and Proposal,* 39 Duq. L. Rev. 513, 515 (2001). While the two concepts are often confused or used interchangeably, scope of review is a distinct concept, referring to "what materials, i.e., what part of the record, the appellate tribunal may consider in performing its review function." *Id.* "In most cases, the scope of review will be described as broad, connoting a use of the entire record. In certain limited situations, it will be described as narrow or limited. *Id.*

disputes.[8]  Section 1301 of the RTKL, 65 P.S. § 67.1301.  Accordingly, we owe no deference to the OOR's legal analysis or factfinding, as our standard of review of a final determination of the OOR is de novo.  *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 474 (Pa. 2013).  In addition, we are "entitled to the broadest scope of review[,]" covering all justiciable issues raised and preserved below.  *Id.* at 477.  *See also Payne v. Pa. Dep't of Health*, 240 A.3d 221, 225 n.6 (Pa. Cmwlth. 2020).  Unlike in other administrative agency contexts, "we . . . may substitute our own findings of fact for that of the agency."  *W. Chester Univ. of Pa. v. Browne*, 71 A.3d 1064, 1067 n.4 (Pa. Cmwlth. 2013).  We have the discretion to conduct a hearing, or to remand to the OOR, to supplement the record.  *Id.*

### B. Sufficient Specificity

#### 1. Arguments

The Governor's Office first argues that because the Requests did not specify a specific subject matter, but rather only the identities of the individuals and a timeframe, the request is insufficiently specific.  It argues the request must identify the transaction or activity at issue, pointing to *Carey* and *Pennsylvania Department of Education v. Pittsburgh Post-Gazette*, 119 A.3d 1121 (Pa. Cmwlth. 2015).  The Governor's Office attempts to distinguish *Baxter* by focusing on two factual differences:  First, that the school district had already identified records, and second, that the school directors at issue there were part time.  By contrast, the individuals whose emails are at issue here are "full time, high-ranking administration employees" who "engage in business that conceivably relates to any or all of the Commonwealth's executive agencies."  (Governor's Office Brief (Br.) at 12.)  It contrasts the "vast operations" of the two individuals here from the school directors

---

[8] Courts of common pleas serve as the ultimate factfinder in RTKL disputes regarding local agencies.  Section 1302 of the RTKL, 65 P.S. § 67.1302.

in *Baxter*, faulting Requester for failing to "include even a single topic about which" Requester seeks records. (*Id.* at 13.) It urges this Court not to give weight to *Methacton* for similar reasons. Pointing to federal Freedom of Information Act[9] caselaw, the Governor's Office explains that the inquiry should be "highly context specific." (*Id.* at 11 (quoting *Nat'l Sec. Counselors v. Cent. Intel. Agency*, 898 F. Supp. 2d 233, 278 (D.D.C. 2012)).) In its view, "reliance on *Baxter* in this circumstance fails to accommodate the 'context sensitive approach[.]'" (Governor's Office Br. at 13.) Finally, the Governor's Office asserts that *Baxter*'s holding has been eroded by subsequent cases.

## 2. Our Sufficient Specificity Jurisprudence

The RTKL requires written requests to "identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested[.]" 65 P.S. § 67.703. We begin with a historical overview of our sufficient specificity jurisprudence, examining the evolution of our approach since the RTKL's enactment. The body of this section primarily discusses our cases involving emails and communications.

We first had occasion to examine Section 703's sufficient specificity requirement in *Pennsylvania State Police v. Office of Open Records*, 995 A.2d 515 (Pa. Cmwlth. 2010) (*PSP*), some two years after the RTKL's enactment. The request at issue there asked for "[a]ny and all records, files, or manual(s), communication(s) of any kind, that explain, instruct, and or require officer(s) and Trooper(s) to follow when stopping a Motor Vehicle[.]" *Id.* at 515-16 (emphasis omitted). We succinctly explained that the "any and all records" part of the request "[was] insufficiently

---

[9] 5 U.S.C. §§ 551-559.

specific for the PSP to respond to the request." *Id.* at 517.[10]  However, "'manuals' relating to vehicle stops . . . [was] specific and does provide a basis for the PSP to respond." *Id.  PSP* reveals that, from the beginning, this Court has not found requests that, quite simply, seek **everything**, to be sufficiently specific.  We implied that there must be some limiting principle—in *PSP*, subject matter (i.e., manuals)—to give the agency a place to start.

Next, in *Mollick v. Township of Worcester*, 32 A.3d 859 (Pa. Cmwlth. 2011), we reasoned that a request seeking "all emails between the [township s]upervisors regarding any [t]ownship business and/or activities for the past one and five years" and "all emails between the [township s]upervisors and the [t]ownship employees regarding any [t]ownship business and/or activities for the past one and five years" were not sufficiently specific. *Id.* at 871.  While acknowledging the RTKL's explicit purpose of allowing access to records and curtailing secrets, we said "it would place an unreasonable burden on an agency to examine **all** its email for an **extended period of time**, without knowing, with sufficient specificity, what [] business or activity the request is related." *Id.*  (emphasis added).  Notably, the *Mollick* Court explicitly concerned itself with burden on the agency in producing the records.

*Baxter*, a perfect foil to *Mollick*, provided our next opportunity to consider a request for emails.  Specifically, that requester sought "all emails sent and received between Oct[ober] 1 and Oct[ober] 31 for email addresses of nine school board members, the school district superintendent[,] and the general school board address."

_____

[10] *Pennsylvania Housing Finance Agency v. Ali*, 43 A.3d 532, 535 (Pa. Cmwlth. 2012), relied on *PSP* in reasoning that "requests for 'all correspondence . . . concerning' the restructuring of the Tasker Village mortgage and the Chestnut/56th Street Apartments workout project 'and/or distributed to the Board' were insufficiently specific for Pennsylvania Housing Finance Agency to respond to the requests."

8

35 A.3d at 1260 (brackets and quotation marks omitted).[11] We reasoned that request was sufficiently specific noting that it limited its focus to a specific **type** of record within a finite 30-day period, and it sought information from a limited number of email addresses. *Id.* at 1265. The fact that the school district had already "identified potential records included within the request" confirmed our conclusion the request satisfied Section 703's standard. *Id.*[12]

That same year, this Court had its first, and to date, only, opportunity to consider Section 703's sufficient specificity requirement sitting en banc. In *Montgomery County v. Iverson*, 50 A.3d 281 (Pa. Cmwlth. 2012), we considered whether a request seeking "all email records" between a given mail domain and three other domains, containing 14 search terms, was sufficiently specific. Comparing that request with *Mollick*, we were persuaded that it failed for similar reasons.

---

[11] We reject the contention propounded by the Governor's Office that *Pittsburgh Post-Gazette* called *Baxter* into question; *Pittsburgh Post-Gazette* specifically cited it approvingly.

[12] Although we were concerned about burdensomeness in *Mollick*, the next case tempered that concern, clarifying that "[t]he fact that a request is burdensome does not deem it overbroad, although it may be considered as a factor in such a determination." *Dep't of Env't Prot. v. Legere*, 50 A.3d 260, 265 (Pa. Cmwlth. 2012). The *Legere* requester sought, in relevant part, "[a]ll Act 233, Section 208 [of the Act of December 19, 1984, P.L. 1140, *as amended*, 58 P.S. § 601.208, repealed by the Act of February 14, 2012, P.L. 87,] determination letters issued by the [Department of Environmental Protection] since January 1, 2008." *Id.* at 262. The *Legere* Court distinguished *Mollick*, noting that "specific **types** of documents ha[d] been requested" and focused on the request's "clearly[]defined universe of documents" and that "no judgments [need] to be made as to whether the documents are 'related' to the request." *Id.* at 264-65 (emphasis added). The *Legere* Court found that the specificity with regard to document type or subject matter **outweighed** the fact that the requester wanted "**all**" of the documents. *Id.* at 265 (emphasis added). Thus, *Legere* helped clarify: (i) that burdensomeness to the agency does not pass muster as a singular justification in resisting production, and (ii) a balancing of various features of the request is necessary to determine sufficient specificity. *See also Dep't of Corr. v. St. Hilaire*, 128 A.3d 859, 864 (Pa. Cmwlth. 2015) (relying in large part on *Legere* in finding request seeking "records that document inmate injuries, a specific subject, for the period from January 2009 through December 2014, a specific time period" sufficiently specific and emphasizing that burdensomeness does not doom an otherwise specific request).

Because "[t]he request[s] provide[d] **no** timeframe . . . [and did] **not** identify specific individuals, email addresses, or even departments[,]" we reasoned that "[t]here [was] not context within which the search [could] be narrowed." *Iverson*, 50 A.3d at 284 (emphasis added). We were careful to explain that "some subject matter context **may** be necessary, as a practical matter, to narrow an otherwise overly broad request down to a request that sufficiently informs an agency of the records requested." *Id.* at 284 n.4 (emphasis added).[13]

We further exhibited our developing balancing approach, and the importance of timeframe, in *Carey*. That request sought all communications, not just emails, regarding, *inter alia*, certain transfers between a state correctional institution and a Michigan facility. With respect to that request, we were satisfied it was sufficiently specific because the requests there "specifie[d] a subject matter, a finite timeframe[, approximately four years,] and [sought] a discrete group of documents, either by type, as communications, or by recipient[.]" 61 A.3d at 372.[14]

---

[13] The following year, we emphasized that lack of timeframe can prove fatal under Section 703, affirming a determination of insufficient specificity and observing the "request is overly broad in terms of delineating a **practical** time-frame[.]" *Askew v. Pa. Off. of Governor*, 65 A.3d 989, 992 (Pa. Cmwlth. 2013) (per curiam) (emphasis added).

[14] In particular, the *Carey* request sought

> [(i)] all communications by [the Department of Corrections] to others regarding the transfers of inmates from Pennsylvania to Michigan, and the reverse, over a finite period of time . . . describ[ing] the specific types of communications sought, 'including emails, texts, phone messages, fax[es][;]' . . . [(ii)] all records and communications of government individuals or entities regarding the transfer of Pennsylvania inmates to Michigan generally[;] . . . [(iii)] information related to [the r]equester's transfer and recommitment[;] . . . [(iv)] all records that were provided to the transferred inmates, before, during, and after their transfer[;] . . . [and (v)] 'all documents/communications which may indicate' the identities of those who authorized the transfers.

*Carey*, 61 A.3d at 372.

10

In *Pittsburgh Post-Gazette*, we attempted to canvas those prior cases, and synthesizing them, we announced what we called a balancing test. Specifically, we read our cases to suggest three factors that require consideration. First, with respect to subject matter, the request must identify a transaction or activity. Second, the scope must "identify 'a discrete group of documents, either by type . . . or by recipient.'" 119 A.3d at 1125. And finally, the "timeframe of the request should identify a finite period of time for which records are sought." *Id.* at 1126. Importantly, we described the timeframe prong as "the most fluid of the three . . . and whether or not the requester's timeframe is narrow enough is generally dependent upon the specificity of the request's subject matter and scope." *Id.* Accordingly, if a request is extremely specific with respect to subject matter and scope, it may be less important to identify a finite timeframe. By contrast, "an extremely short timeframe will not rescue an otherwise overbroad request, except for in the most extraordinary circumstances." *Id.* We cited *Baxter* as one such "extraordinary" request. *Id.*

Having set forth the test, the *Pittsburgh Post-Gazette* Court proceeded to find a request for "[a]ll of the emails of [the] Acting Secretary of Education . . . as they pertain to the performance of her duties as Acting Secretary since she was appointed on Aug[ust] 25, 2014 to date" insufficiently specific. *Id.* at 1123 (footnote omitted). Although that request limited itself to a finite, 347-day timeframe and limited its scope to the emails of one government official, it failed to adequately address or specify the subject matter of the request. *Id.* at 1126. We specifically noted that the timeframe was not short enough to outweigh the lack of subject matter specificity.

In the next reported case dealing with sufficient specificity head on, the request at issue sought, relevant here, correspondence with respect to certain budget

11

and financial reports originating from a university president, provost, deans, vice president of administration and finance, and other specified individuals, over a five-year period. *PASSHE*. We rejected the insufficient specificity argument raised by the state university system out of hand. We found that request to be "clearly defined" with respect to subject matter because "it seeks correspondence from specified officials." 142 A.3d at 1030. We said its scope of correspondence related to specified reports satisfied the scope prong, and the timeframe, five years, satisfied the timeframe prong. *Id.*

Next, and particularly relevant here, in *Commonwealth v. Engelkemier*, 148 A.3d 522, 530 (Pa. Cmwlth. 2016), we were called on to evaluate whether a request for emails over approximately five months, relating to 109 key words, from the Governor's chief of staff was sufficiently specific. Procedurally, the Governor's Office asked for a 30-day extension. However, after explaining that it "received the results of the IT forensic search . . . [of] thousands upon thousands of pages[,]" the Governor's Office asked the requester to provide "subject(s) matter(s) [sic] so that the agency may begin to review these records in a more systematic fashion." *Id.* at 524-25. At the appeals officer stage, the Governor's Office provided a privilege log, as well as an affidavit, to support specific exemptions. There, the appeals officer ultimately concluded that the email request was sufficiently specific.

The *Engelkemier* Court began its analysis by noting that timeframe and scope counseled in favor of sufficient specificity. However, its concern was subject matter, namely, the list of 109 keywords the requester provided. *Id.* In the course of its analysis, the Court mentioned that, after receiving the requester's keywords, the Governor's Office did not seek further clarity of narrowing from the requester. It then said that it would try to engage in a rolling production of the emails. Therefore,

12

the Court rejected the Governor's Office argument that the request was not sufficiently specific to identify the universe of documents requested due to the responses the Governor's Office provided, and its conduct, during the request. It explained:

> If the [Governor's] Office had any lingering concerns over the specificity of the request, it should have raised the specificity concern at that time. It did not. It clearly acted as if it had sufficient information upon which it could fully process [the r]equester's request and, based on that representation, secured from [the r]equester an extension of time and agreement to a rolling production schedule.

*Id.* at 532. Possible lack of specificity in the lengthy list of potentially broad keyword terms was outweighed by the narrow timeframe and scope of the records. *Id.* at 532-33.[15]

In *Office of the District Attorney of Philadelphia v. Bagwell*, 155 A.3d 1119 (Pa. Cmwlth. 2017), this Court, looking to the *Pittsburgh Post-Gazette* factors, found two requests related to emails sufficiently specific: first, a request for "[a]ll e[]mails, memos and letters exchanged by the [District Attorney] and the [City of Philadelphia's (City)] Office of Innovation and Technology between July 1, 2013 and October 1, 2014 pertaining to searching for e[]mails on the [City's] email servers and/or backup copies of the [City's] e[]mail servers[,]" *Bagwell*, 155 A.3d at 1143, and second, a request for "[a]ll e[]mails, letters and memos pertaining to the [District Attorney's] transition from Lotus Notes e[]mail platform to the Microsoft Exchange e-mail platform between January 1, 2013 and December 31, 2013[,]" *id.* at 1144.

---

[15] The disputed request in the next case was for "rules, regulations, policies[,] or related authority that governs [the] duties and functions" of an agency. *Pa. Off. of Inspector Gen. v. Brown*, 152 A.3d 369, 370 (Pa. Cmwlth. 2016). Declining to find that request sufficiently specific, we focused on the subject matter prong, reasoning that request "did not identify the [] transaction or activity for which the record [was] sought." *Id.* at 374.

Finding the requests sufficiently specific, we emphasized that the requests at issue sought "a 'clearly defined universe of documents.'" *Id.* at 1145.[16]

Stepping back, we observe that *Pittsburgh Post-Gazette* sets forth a useful framework in that it provides us a vocabulary as to three specific features of requests we may need to consider in determining whether a request is sufficiently specific under Section 703. However, *Pittsburgh Post-Gazette* did not set forth a conjunctive, bright-line rule requiring each "element" of the test to be satisfied; rather, it set forth a flexible approach, consistent with the cases it summarized. *Bagwell* underscored the flexibility of the test, and the post-*Pittsburgh Post-Gazette* vitality of *Iverson*, noting that "although *Iverson* was decided prior to this Court's clear recitation of the sufficiently specific test in *Pittsburgh Post-Gazette*, the reasoning in *Iverson* highlights the flexible, case[-]by[-]case, contextual application

---

[16] With respect to a request seeking "[a]ny other record in any way relating to the current litigation specified [in an earlier request,]" we found it to be insufficiently specific. *City of Harrisburg v. Prince*, 186 A.3d 544, 559 (Pa. Cmwlth. 2018), *rev'd on other grounds*, 219 A.3d 602 (Pa. 2019). Though it satisfied the timeframe and subject matter prongs, it failed with respect to scope "because it [did] not identify a discrete group of documents either by type . . . or recipient." *Id.* at 560 (quotation and citation marks omitted). The next year, the Court in *Borough of Pottstown v. Suber-Aponte*, found a request for "police video footage [on a single day] of [the requester herself] . . . from the time [she was] brought in [to the police department] and all activity at [the police department] that day[,]" 202 A.3d 173, 177 (Pa. Cmwlth. 2019), sufficiently specific because it "clearly identifie[d] the subject matter of the request ([police d]epartment activity and [the r]equester), the scope of records sought (video surveillance footage) and a specific timeframe (October 4, 2015 - a single day)[,]" *id.* at 179. Finally, in *Lancaster County District Attorney's Office v. Walker*, we were persuaded that a request seeking "documentation that shows how [a forfeited item] was processed, whether that was sale, reutilization, or distribution to other law enforcement agen[cies] or personnel." 245 A.3d 1197, 1204 (Pa. Cmwlth. 2021) (emphasis omitted). We observed the request was specific "as to timeframe, activity and recipient." *Id.* at 1203. Looking to the statutory language confirmed the analysis; we pointed to testimony of the district attorney himself in which he acknowledged that he understood what the request sought, thus it was clearly sufficiently specific to enable "the agency [to] determine which records [were] sought." *Id.* at 1204 (citing 65 P.S. § 67.703).

of the test." *Bagwell*, 155 A.3d at 1144-45 (emphasis added).[17] Indeed, we agree that "[t]here is no bright-line rule absolutely requiring a requester to precisely identify the subject matter of the requested record. The absence of a stated subject matter is but one factor to consider[.]" *Methacton*, slip op. at 3-4.

We are also mindful that *Bagwell* and *Methacton*'s reminder of the necessarily context-sensitive and case-by-case approach required by Section 703 coheres with the statutory text—our polestar in this inquiry—which sets as the standard whether the requester has "identifi[ied] or describ[ed] the records sought with sufficient specificity" such that the "agency [can] ascertain which records are being requested." 65 P.S. § 67.703.

Further, we wish to make clear that it may be a misnomer to characterize *Pittsburgh Post-Gazette*'s test as a balancing test at all. A balancing test is "[a] judicial doctrine, used esp[ecially] in constitutional law, whereby a court measures competing interests – as between individual rights and governmental powers, or between state authority and federal supremacy – and decides which interest should prevail." Black's Law Dictionary 163 (9th ed. 2009). *See, e.g.*, *Pa. State Educ. Ass'n v. Dep't of Cmty. & Econ. Dev.*, 148 A.3d 142, 158 (Pa. 2016) (requiring courts to **balance** two interests and determine which one should prevail: "[t]he right to informational privacy . . . [against] a public interest favoring disclosure"). Balancing tests require courts to figure out, on balance, whose interest prevails. By contrast, the test announced in *Pittsburgh Post-Gazette* is more akin to a nonexclusive, multifactor test a court might use **not** to determine whether a given interest prevails, but rather to decide whether a given item has the requisite features to classify it in a certain way, or put another way, to decide into which "bucket" a given item falls.

---

[17] Notably, as stated above, *Iverson* remains this Court's only en banc pronouncement with respect to Section 703's sufficient specificity requirement.

15

Of course, the classic example of such a test is the multifactor test to determine whether a given worker is an employee or independent contractor. "While no hard and fast rule exists . . . certain factors are required to be taken into consideration . . . [and] no one factor is dispositive[.]" *Edwards v. Workers' Comp. Appeal Bd. (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1162 (Pa. Cmwlth. 2016). *See also Brentwood Borough Sch. Dist. v. HSBC Bank USA*, 111 A.3d 807, 813 (Pa. Cmwlth. 2015), *aff'd sub nom. Brentwood Borough Sch. Dist. v. Held*, 139 A.3d 187 (Pa. 2016) (per curiam) (setting forth multifactor test to determine whether a dwelling is "vacant"). Just like the multifactor tests we use to determine whether we can classify a given worker as an independent contractor, or whether we can classify a given property as vacant, the *Pittsburgh Post-Gazette* test (a nonexclusive, multifactor test) helps us think about whether we can classify a given request as sufficiently specific.

In determining whether a given request can be classified as sufficiently specific, courts must consider, consistent with *Pittsburgh Post-Gazette*, the extent to which the request specifies subject matter, the extent to which it defines the scope of the records it seeks, and the extent to which it limits the timeframe of the request. Consistent with *Baxter* and *Methacton*, no one factor is dispositive, and consistent with *Iverson*, we must not ignore the case-by-case nature of this inherently fact-sensitive inquiry.

3. Analysis

We next look to the Requests at issue in this case in light of those observations about the law. First, as the Governor's Office points out, it may be true that the Requests here do not specifically point to the precise transaction or activity about which Requester desires information. However, as just discussed, subject matter is "but one factor to consider." *Methacton*, slip op. at 4. What is more, the *PASSHE*

16

Court, looking to the emails and records requested there, reasoned that specifying the official and the university with which they were associated sufficiently delimited the subject matter. *PASSHE*, 142 A.3d at 1030. We would also note that, although the Requests do not focus on a particular transaction or activity in a strict sense, they do focus on two specific individuals, which necessarily, as the *PASSHE* Court observed, serves to limit the subject matter. Further, communication via email, is, as a matter of plain language, an **activity** of the Governor's Office, such that we are satisfied that it could amount to a specifically identified activity under the subject matter factor.

Next, we turn to scope. It is clear that these Requests "identify a discrete group of documents[,]" namely, emails. *Pittsburgh Post*-Gazette, 119 A.3d at 1125 (internal quotation marks omitted). Indeed, we find it difficult to distinguish the Requests at issue here from the request in *Baxter*, where we reasoned that limiting the request to a finite number of email addresses, a specific type of record (emails), within a 30-day time period was sufficiently limited in scope.

And finally, the timeframes here—10 days and 21 days—are narrower than *Baxter*'s month-long period, *Engelkemier*'s 5-month period, or *Methacton*'s 4-month period. If there were any doubt as to the first two factors, the Requests make it clear that Requester has adequately specified the records Requester seeks—in other words, the three factors, considered together, evince a sufficiently specific request because the Requests seek "a clearly-defined universe of documents." *Dep't of Env't Prot. v. Legere*, 50 A.3d 260, 265 (Pa. Cmwlth. 2012).

The recent unreported decisions cited by the OOR and the Governor's Office further support this conclusion. In *Methacton*, slip op. at 2, the school district pressed an almost identical theory in objecting to a request for emails, namely that

17

in failing to identify a specific transaction or activity, the request was not sufficiently specific. That request involved all emails sent and received by four school district employees during four separate one-month spans. *Id.* at 1. We rejected the school district's specificity argument out of hand, noting that "[t]here is no bright-line rule absolutely requiring a requester to precisely identify the subject matter of the requested record. The absence of a stated subject matter is but one factor to consider[.]" *Id.* at 3-4. Notably, the request in *Methacton* was directed to **more** employees, and for **longer** time periods, than the Requests at issue here.[18]

By contrast, *Keystone Nursing and Rehab of Reading, LLC v. Simmons-Ritchie* (Pa. Cmwlth., No. 1631 C.D. 2018, filed January 3, 2020), is readily distinguishable. The requester there asked for "**all correspondence** sent and received (including text messages and memos)" from four individuals within a 48-day timeframe. Slip op. at 39 (emphasis in original). We reemphasized the importance of considering **all** factors, not just one. And there, we specifically contrasted cases involving **only emails**, like *Baxter*, with the then-pending request, with "**all correspondence** through all mediums, electronic and written, **sent and received** by four named individuals over a 48-day timeframe." *Id.* at 41 (emphasis in original). Again, here, like *Baxter*, requester seeks only emails, not the breadth of materials sought by the requester in *Simmons-Ritchie*.

Finally, and most important, the statutory text confirms our conclusion. As discussed above, the General Assembly specifically couched the sufficient

---

[18] The Governor's Office seeks to distinguish both *Methacton* and *Baxter* on the ground that there, both school districts initially did identify a pool of possible emails and set them aside, whereas the Governor's Office here did not. In *Methacton*, **after** concluding that the request was sufficiently specific, the panel also rejected the school district's contention that its identification of the documents should not serve as a concession of sufficient specificity. *Methacton*, slip op. at 5.

specificity requirement within a concern that the request "enable the agency to ascertain which records are being requested." 65 P.S. § 67.703. As a matter of common sense, it is hard to conceive of a scenario where we could reasonably conclude that a request seeking emails from two specific people, over the course of less than a month, would be insufficient to enable an agency to figure out precisely what the requester was seeking. This certainly does not amount to a "fishing expedition." *Pittsburgh Post-Gazette*, 119 A.3d at 1126. Accordingly, the OOR correctly concluded the Requests were sufficiently specific.

### C. Additional Time under PASSHE

We next consider the Governor's Office's argument that the OOR erred in declining its request to review and provide more detailed information with respect to potentially privileged and exempt records in light of *PASSHE*. It argues that *PASSHE* suggests a remand to the OOR would be proper for it to consider, *inter alia*, the other exemptions proffered by the Governor's Office. It asserts that the OOR erred in believing the Governor's Office failed to seek an extension pursuant to *PASSHE*.

We begin with the structure of the RTKL itself. While the RTKL creates a presumption that records in the possession of an agency are public, the presumption does not apply if the record is "exempt under Section 708 of the RTKL, the record is protected by a privilege, or the record is exempt from disclosure under any other federal or state law or regulation or judicial order." *Engelkemier*, 148 A.3d at 533. The burden is on the agency, by a preponderance of the evidence, to prove a record falls into one of the exemptions. *Id.* at 534 (citing 65 P.S. § 67.708(a)). As our Supreme Court noted in *Levy v. Senate of Pennsylvania*, "while the overriding purpose of the RTKL may relate to ensuring expanded and expedited transparency

19

in [] government, the RTKL . . . protects from disclosure documents subject to a privilege, exempt from disclosure under another federal or state law, or subject to any of the exceptions expressly and painstakingly listed in Section 708(b)." 65 A.3d 361, 382 (Pa. 2013). There, rejecting a strict waiver approach this Court had developed, the Supreme Court pointed to "a legislative intent to shield numerous categories and subcategories of documents from disclosure in order to protect, *inter alia*, the Commonwealth's security interests and individuals' privacy rights." *Id.*[19] It is important to remain aware not only that the RTKL advances the public interest in promoting transparency, but through its exemptions, furthers the public interest in promoting public safety and security, as well as individual privacy.

We agree with the Governor's Office that the OOR erred in concluding that the Governor's Office raised its *PASSHE* argument either at the wrong time, or in the wrong manner. (*See* Final Determination at 7 n.6 ("Notably, at the outset of the appeal, the [Governor's] Office did not seek an extension from the OOR pursuant to [*PASSHE*], for the purpose of gathering and reviewing the responsive emails.").) First, the Affirmation details the applicable exemptions, noting specifically why such exemptions are very likely to apply based on the nature of the jobs and activities of the individuals to whose emails the Requests relate. (R.R. at 21a-25a.) Further, our Supreme Court has cited *PASSHE*, quite simply, for the proposition that an "agency . . . may request an extension of time [before the OOR] in which to comply with a RTKL request." *McKelvey v. Pa. Dep't of Health*, 255 A.3d 385, 404 (Pa. 2021). Recently, observed that an agency's "failure to review the responsive

---

[19] The Supreme Court also acknowledged the obvious issues with the RKTL's system of speedy determination. "[W]e are cognizant that the efficiency of the RTKL process arguably results in informality bordering on lack of due process regarding the protections provided by the RTKL." *Levy*, 65 A.3d at 382.

20

documents and provide details as to why they fall within this exception, **or to request additional time to do so**, *PASSHE*, 142 A.3d at 1031-32, prevents a determination of whether a **particular** document involved was created during the course of a noncriminal investigation." *Pa. Pub. Util. Comm'n v. Friedman*, 293 A.3d 803, 831 (Pa. Cmwlth. 2023) (second emphasis in original). Upon review of the record, we are satisfied that, although it did not cite *PASSHE* itself in its position statement, the Governor's Office explicitly asked for additional time to identify records and conduct a legal review of exemptions. (*See* R.R. at 20a ("[T]he [Governor's] Office respectfully request[s] the opportunity to review and provide more detailed information regarding sufficient bases to withhold or redact those privileged or exempt records.").)

The Affirmation—properly before the OOR—gives us pause. The Affirmation here establishes that among these emails there are almost certainly records relating to, *inter alia*, "military, law enforcement and homeland security operations . . . including 911 recordings." (Affirmation ¶ 12.) The Affirmation explains that disclosure is "reasonably likely to jeopardize or threaten public safety or preparedness" and there exists a "reasonable likelihood of endangering the safety or the physical security of a building, public utility, resource, infrastructure[.]" (*Id.* ¶ 12(b)-(c).) Here, the Governor's Office asserted exemptions and asked for extra time. To deprive the Governor's Office of the opportunity to cull the records and identify exemptions would thwart the General Assembly's intent in enacting the RTKL to keep certain classes of records protected from public disclosure. *Levy*, *PASSHE*.

Accordingly, we conclude the Governor's Office properly requested an extension of time, pursuant to *PASSHE*, to identify responsive records and make

21

exemption determinations, as an alternative argument to its insufficient specificity position. The OOR erred in concluding otherwise. Therefore, we vacate the Final Determination of the OOR insofar as it deemed this issue not properly raised and remand to allow the Governor's Office reasonable additional time to identify responsive records and claim specific applicable exemptions.[20]

## III. Conclusion

For the foregoing reasons, we affirm the Final Determination of the OOR insofar as it found the Requests sufficiently specific. However, we vacate the Final Determination to the extent it concluded the Governor's Office had failed to request extra time pursuant to *PASSHE*. Therefore, we remand with instructions that the OOR provide the Governor's Office reasonable time to identify the records and claim applicable exemptions.

**RENÉE COHN JUBELIRER,** President Judge

---

[20] Because our resolution of the *PASSHE* issue itself is dispositive and independently requires vacatur and remand, we will not address the second issue the Governor's Office raised on appeal.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Office of the Governor, : 
                      Petitioner : 
                            : 
                            : 
              v. : No. 363 C.D. 2022
                            : 
Beth Brelje (Office of Open : 
Records), : 
                  Respondent : 

## O R D E R

**NOW**, February 23, 2024, the Final Determination of the Office of Open Records in the above-captioned matter is **AFFIRMED** to the extent it found the requests in the above-captioned matter sufficiently specific and **VACATED** to the extent it concluded the Office of the Governor had failed to request extra time pursuant to *Pennsylvania State System of Higher Education v. Association of State College and University Faculties*, 142 A.3d 1023 (Pa. Cmwlth. 2016). Accordingly, this matter is **REMANDED**, and the Office of Open Records is **ORDERED** to provide the Office of the Governor reasonable time to identify responsive records and claim applicable exemptions, after which the Office of Open Records shall issue a new determination.

Jurisdiction is relinquished.

 

                                           _____

                                         **RENÉE COHN JUBELIRER,** President Judge